The clerk will call the next case, 314-012-0. People of the State of Illinois, affidavit by Justice Kowalski v. Allie Evans, appealed by Demetrius Goldfuss. Mr. Goldfuss, you may proceed. Cheers to the afternoon. So good afternoon, Your Honors. Afternoon. May it please the Court, Demetrius Goldfuss, assistant appellate defender on behalf of Allie Evans, the defendant. Your Honors, this is Mr. Evans' second appeal to this court in this case. The jury originally convicted Mr. Evans of first-degree murder for the shooting death of a gas station clerk in Peoria in 2009. In his first direct appeal, this court reversed his conviction and remanded for a new trial, holding that the trial judge erred by failing to suppress statements that Mr. Evans made to the police and that that error was not harmless, given conflicting evidence on the issue of identity. On remand, a jury again convicted Mr. Evans of first-degree murder. In this appeal, we've raised four issues. The first issue requests reversal of Mr. Evans' conviction and a remand for proceedings, really on two independent grounds, both of which  from the prosecutor's direct examination of Mr. Evans' co-defendant, D'Angelo Lindsay. The first ground is a violation of Mr. Evans' constitutional right to confrontation. And the second ground is that there was testimony from D'Angelo Lindsay that was improperly elicited that he was convicted of first-degree murder on the basis of accountability for the death of a victim in this case. Our second issue on appeal is that the prosecutor violated this court's suppression order on remand by eliciting testimony from Detective Keith McDaniel that my client made incriminating. He listed testimony that necessarily inferred that my client made incriminating statements to the police. Our third issue is a claim of cumulative error. And the fourth issue is a request for a remand for proper imposition of fines and fees. Although all these issues merit the court's attention, I'll be focusing my argument today on the violation of Mr. Evans' constitutional right to confrontation. Of course, if you're honest with any further questions on the other issues, I would be happy to address them. Our claim of a constitutional violation of Mr. Evans' right to confrontation raises the question of what a prosecutor should do when one of his key witnesses refuses to answer questions on a material matter in a case that, if answered affirmatively, would incriminate the defendant on grounds that, by pleading the Fifth Amendment, privilege against self-incrimination. This case provides a textbook example of what a prosecutor should not do in those circumstances. Our Supreme Court has held that it is reversible error for a prosecutor to compel a witness to invoke the Fifth Amendment before a jury when the effect of that invocation is to suggest by implication that the defendant is guilty. When you say compel a witness to invoke the Fifth Amendment, did that case involve a case where the witness had been granted dis-immunity? In Crawford, I believe the witness in Crawford I believe the witness in Crawford was granted dis-immunity. Well, my only question is, how do you compel someone to invoke the Fifth if they've got dis-immunity? You go into the direct examination knowing that the witness has, before being granted immunity, expressed that they're going to plead the Fifth. Even after being granted immunity, they've expressed they're going to plead the Fifth. Now, our claim isn't that, if a prosecutor's granted a witness immunity, that they shouldn't call the witness to the stand. The prosecutor has a right to call that witness and to expect that witness to testify when that witness has immunity. But when the prosecutor knows that notwithstanding this grant of immunity, and the witness has expressed that, even though I understand I can't invoke the Fifth Amendment, I'm going to do it anyways, our claim is that the prosecutor should proceed carefully. And if, in a direct examination, that prosecutor learns that, OK, this defendant, notwithstanding the immunity, is still pleading the Fifth, you need to proceed carefully. And you can't prejudice the defendant by going through your entire theory of the case through leading questions to the witness, laying out what you think happened. And then just have the witness say, I plead the Fifth, I plead the Fifth, I plead the Fifth. In the Met, the United States Supreme Court articulated two scenarios where a required reversal due to the prosecutor's compelling a witness to invoke the Fifth Amendment privilege. The first scenario is an instance of prosecutorial misconduct, where a prosecutor intentionally and flagrantly uses a witness's indication of the Fifth Amendment privilege. And the inference is arising from that indication to fill the case that the defendant is guilty. We are not arguing that that scenario applies here. The second scenario occurs when the witness is refusal to answer questions as critical weight to the case case in a form not subject to cross-examination. The prosecutor's examination of D'Angelo Lindsay in this case squarely fits that scenario. What occurred in this case was when D'Angelo Lindsay was brought in to testify, he had already told the court outside the hearing of the jury that he was going to invoke his Fifth Amendment rights to plead to not testify. He told the prosecutor that as well on numerous occasions. He said he was going to do that even though he was told that he had immunity and that he didn't have that right. During the direct examination in front of the jury, D'Angelo Lindsay invoked the Fifth Amendment in response to over 20 questions. On my count, it's 25. Through those questions, the prosecutor asked him questions about the day of the murder. D'Angelo Lindsay did not answer a single question about the day of the murder. The prosecutor alleged such facts as that D'Angelo Lindsay and Ali Evans went to this gas station with a gun with the intent to commit an armed robbery and that before they went there, they were at D'Angelo Lindsay's sister's house, which we know is where the murder weapon was found. The prosecutor, through her questions, alleged that Ali Evans went up to the gas station clerk and said, quote, give me that shit, that the gas station clerk bent down to reach for money, and that Ali Evans shot and killed the gas station clerk. The prosecutor even referred to specific statements that my client allegedly said to D'Angelo Lindsay in the gas station. Because D'Angelo Lindsay did not answer any of these questions, the jury could infer that since he wasn't answering them, the facts alleged by the prosecutor in question were true. This scenario was highly likely because the trial judge informed the jury that D'Angelo Lindsay had use immunity. And because he had use immunity, he couldn't refuse to testify because nothing he said in answer to questions could be used against him. Any reasonable juror in that situation with knowledge of Lindsay having immunity would say to themselves, OK, if D'Angelo Lindsay isn't invoking the Fifth Amendment to protect himself, he must be invoking it to protect Ali Evans, who is the only other person in this case who is alleged to be a co-defendant. And because of that, they would conclude that the facts alleged by the prosecutor for your questions must have been true. Now, under Supreme Court case law, D'Angelo Lindsay was not subject to cross-examination for purposes of the Sixth Amendment. Because he refused to answer questions about the day of the murder, he could not be cross-examined on that subject. You can't answer questions on cross-examination about a subject that you don't testify to under write. The United States Supreme Court made this principle of law clear in Douglas v. Alabama. So for these reasons, there was a violation of Ali Evans' right to confrontation. This violation requires a reversal of this conviction because the inferences of guilt arising from D'Angelo Lindsay's invocation of the Fifth Amendment privilege add a critical weight to the state's case. Just as I think strategically, the prosecutor would want to allow the defense counsel to cross-examine the guy, even if he refused to answer questions. Because I think whatever he said would probably doom her. I don't understand why even prosecutors push for that rule. Because let him answer questions on the cross-examination. Well, I mean, I guess it's neither here nor there. I just find that rule interesting because I don't know why the prosecutor would want to do it. According to the Supreme Court in Douglas, it is neither here nor there. The dispute issued in this case were identity and intent to commit the underlying felony of armed robbery. The prosecutor's questions to D'Angelo Lindsay on about the day of the murder were directly prohibitive of both of these issues. Again, the prosecutor basically laid out her entire theory of the case, that Ali Evans went into this gas station with Lindsay with the intent to commit an armed robbery and shot and killed this gas station clerk. Importantly, the state's evidence in this case was not strong. This court noted as much in Ali Evans' first direct appeal, which I believe Justice O'Brien and Carter were on the panel in that case. Nothing has changed in the second case. The state's key witness was Shania Sherman. In both the first trial and the second trial, she had a motive to lie and she was biased against my client because she had witnessed my client beat up her boyfriend. She went to the police with that information. Additionally, in both trials, her testimony was countered by the testimony of her father, Larry. And in the second trial, as opposed to the first, it was countered to an even greater degree by the testimony of her brother, Lazarus, who gave a completely different story than what she testified to. The only new witness for the state in Ali's second trial was Corey Braggs. And Corey Braggs basically testified that my client told him in jail that he committed this murder with D'Angelo Lindsay. Corey Braggs was a convicted felon. He was receiving consideration to testify against my client. He testified to matters that were inconsistent with the physical evidence. He said that the victim was shot twice. The victim was actually shot five times. He also testified that he had a good, or I believe the words he used was, cool relationship with my client. The testimony of Brian Van Bombrin contradicts that. Brian came in and said that D'Angelo Lindsay and Corey Braggs, I mean, I'm sorry, Ali Evans and Corey Braggs did not get along, that they did not have conversations, even though they were cellmates. And even that on the day that Corey Braggs brought in to testify, he told Brian Van Bombrin that he did not like Ali Evans. So when you look at the evidence in this case, the state's two key witnesses were both significantly impeached, and their testimony was countered by the testimony of other witnesses. Aside from Sherman and Braggs, there was no other evidence in this case that linked my client to the gas station or of a murder weapon. Finally, I would just note that the trial judge did not, at any point, instruct the jury not to take any adverse inferences away from D'Angelo Lindsay's invocation of the Fifth, not to take those inferences against my client. The prosecutor, during her closing argument, emphasized the fact that D'Angelo Lindsay pleaded the Fifth. To paraphrase, she said something along the lines of Fifth Amendment, Fifth Amendment, that's all he did all day. And I would also note that during the jury's deliberation, the judge noted that the jury was apparently having difficulty arriving at a verdict. So for these reasons, we would submit that the inference's appeal arising from Lindsay's refusal to answer questions did, in fact, add critical weight to the state's case. And unless Your Honor has any further questions, we would respectfully request that you reverse Ali's conviction and remand for further proceedings. If there are any questions, thank you, Mr. Koffes. Mr. Nicolosi? Good afternoon, Your Honors. May it please the court. Mr. Koffes, I guess my question here is that this case gets me thinking about is, when is a prosecutor supposed to stop questioning a witness that has already said he's going to go up and plead the Fifth Amendment? Well, this prosecutor has 20 questions. Yes. Went through the whole offense. Yes. What was left out in the offense from her testimony, the prosecutor's testimony? Well, Your Honor, I don't believe the prosecutor testified here, but the fact of the matter is, as the judge Well, wait a minute. The prosecutor, you know, he kept on saying, I plead the Fifth, I plead the Fifth. Well, the prosecutor didn't say that, Your Honor. Huh? The witness said that. The witness said that. Yeah, he said the prosecutor. OK, and you're currently in the Department of Corrections. Yes, ma'am. That's for first degree murder. Then he puts accountability. And then, do you know a person by the name of, yes, I know him. So he answered the first couple of questions. Yes. Could you point him out? And he said, in the black suit there. So he's answering the first couple of questions. And then, how do you know him? He's an associate. And then she goes into the offense. Now, were you with Mr. Evans on May 27th? I plead the Fifth. I don't remember. No, ma'am. Well, do you remember going to the US gas station on the 27th? I plead the Fifth. The judge informed, you know, then about the immunity. Do you remember going to the gas station on May 27th? You know, and he's not answering. And then, do you remember when the gas station clerk died? Let's start with an easy one. Do you remember that? That's a question. I plead the Fifth. Do you remember the gas station clerk lost his life? Let's start another way. Do you remember the gun you used when the gas station clerk lost his life? I plead the Fifth. Do you remember the gun you touched? That's a question. Yes, I plead the Fifth. Well, your fingerprints are on the gun. That's the question. To my knowledge, that's not my trial. I'm found guilty, remember. So you don't even know if your fingerprints were on the gun. I plead the Fifth. You don't have a right to plead the Fifth. Were your fingerprints on it because you grabbed the murder weapon from Alec? I plead the Fifth. Were you at your sister's house before you went to the gas station? I plead the Fifth. You have to answer that question. And it goes on and on. And then it ends up with, I plead the Fifth. Were you just chilling at your sister's crib before you went to the store? Were you chilling at your sister's crib before you went to the store? I'm not answering that question. That's a simple yes or no. I object. And I plead the Fifth. When the two of you went to the store, was the purpose to rob the store clerk? But that you were simply, at that point, going to see how many people were in the store? I plead the Fifth. How many people were working? I plead the Fifth. You go through the middle aisle. I mean, she went through the whole crime. She did. And so it goes all the way to the end. So she covered the whole thing. I understand. And you say, isn't that a problem with some of those cases dealing with when they know they're pleading the Fifth? I mean, the two examples of when the prosecutor makes a conscious and flagrant attempt to build his case out of inferences arising from the use of testimonial privilege, and when a witness refused to answer added critical weight to the prosecution's case in a form not subject to cross-examination. Your Honor, I can't. You're stuck with the facts, as they are. Of course. Of course you are. Sure. I guess a couple of thoughts. Number one, there was no objection during any of that by defense counsel. Defense counsel didn't object until after a flurry of Fifth Amendments, which, of course, the state will point out again that this witness didn't have the right or the ability to use. But defense counsel wasn't there to object to these questions. But there was an objection in the middle of all this. It actually was quite near the end of all of this. Actually, after the lion's share of all the questions asked by the prosecutor, the objection didn't come until after that. So my question would be, where's defense counsel number one? Number two. He ultimately made an objection. Ultimately. But he let an awful lot happen before he did. But it continued on afterwards. Briefly afterwards, yes. But not, again, like I said, the lion's share happened before. But my comment, and as I stressed in my brief, is that this witness answered more preliminary questions than even he let on that he was going to answer. He originally said, before they even put him on the stand, he wasn't going to answer any question. He was going to plead the Fifth to everything. I'm not asking about the preliminary questions, because that was fair game. I understand. I'm talking about going through the whole crime. Going through the whole crime is what I'm asking about. I understand. But when the prosecutor was asking, do you know Ollie Evans? Yes. Identified him in court. How do you know him? He's an associate. Well, people would submit, what does that mean, exactly? I think the prosecutor at that point, and talk about how long he knew him, the prosecutor at that point had the ability to continue the question, to ask exactly what this association was all about. She, of course, couched that in the facts of this crime. But the fact of the matter is, and the judge down below even mentioned, well, the witness did answer some questions. And his indication, I took that to mean is that he didn't think that this witness was going to answer anything, because the witness said he wasn't going to answer anything. Yeah, but we're beyond that. We're talking about what happened at the rest of the day. I understand, Your Honor. She finalized with, did Ali shoot the cashier? It's a yes or no question. Did Ali shoot the cashier? No response from the witness. Sure. Enjoy your life in prison. Objection, Your Honor. Don't object. Don't object, said the witness. Yeah, that comment was uncalled for, no question. He had good luck on the trial. I understand that the questioning was extensive, Your Honor. But the people would submit that D'Angelo Lindsay didn't confirm any of those statements. He never implicated the defendant in any of this. Even the comment that he was in jail for murder based on accountability, which, of course, was volunteered, that had nothing to do with the prosecutor. But he never said he was accountable with defendant, that the defendant was accountable with him. But the prosecutor testified. By her question, she said, weren't you with him then? Weren't you with him then? Weren't you with him then? Did you see this? Did you touch the gun? Did you do this? But that was never confirmed, Your Honor. She went through the whole crime. I understand. I understand, Your Honor. But D'Angelo Lindsay never confirmed anything. He never said yes. He never. Which doesn't get almost, I know that has been alleged by Mr. Galt, but doesn't that almost lead to the first prior analysis of prosecutorial misconduct, where they make a narrative, where they know that someone is going to invoke the Fifth, that they're not going to answer. So they use it as an opportunity just to simply put their view of the case into the record. And it seems that the best approach is when the state knows that somebody is going to plead the Fifth, even after an invocation or an offer of immunity, that they should have that first part of that hearing in front of the judge, where we have it here on the record, where the judge says, hey, you've been given immunity. You really are supposed to be answering these questions. There's no reason for you to be taking the Fifth. And shouldn't that really have happened outside of the presence of the jury in the best case? I mean, and then, like you said, they have the right. They've given him immunity without knowing that he still is not going to answer. They have the right to bring him. But then when he says, I'm not answering any of these questions, what point is it that the prosecutor has to recognize that this is, procedurally, is it something that they can do any longer? Well, Your Honor, the defendant had counsel during this whole trial. And again, as I discussed with Justice Carter, counsel didn't object until very, very late in all of this questioning. And you're not suggesting there's any waiver of this argument, are you? Well, sure. I mean, because he objected. But he objected once. He allowed a lot of things to happen. And I don't think you can just allow one course of questioning or one course of procedure and then later complain. So you just think this was all just invited error? Invited error? No, Your Honor, I'm just stating that the facts as they exist. I understand what the prosecutor did. But I also clearly understand, I think this record is clear, that the defendant didn't, I'm sorry, I keep saying the defendant, D'Angelo Lindsay didn't confirm any of this. And I guess I'm going to transition as smoothly as I possibly can into a harmless error argument. And I'm going to start right where I just left off. Again, I don't see how this error can be, this error, if this court finds error, carried a ton of weight. Because again, D'Angelo Lindsay never implicated the defendant. The witness didn't add anything to the case against the defendant here. And further, as counsel mentioned, there were two strong witnesses on the state's behalf. Shania Sherman, she said she was 100% sure that the defendant was one of the two men who were running out of the USA Gas Station store on the day in question, at the time in question. And why that's important is because Sherman knew the defendant. She testified that Sherman, that her boyfriend and the defendant had gotten in a fight previously, that she had known the defendant for a year. Now, while counsel said that this demonstrates bias, people would submit that's fine, but what it also demonstrates is that she knew this gentleman for a long time. She had, obviously, some pretty intense relation with him, the fact that she saw him fighting her boyfriend. So this wasn't as if she went to the police with a couple of distinguishing factors of an individual and they tried to piece together an identification of who she saw coming out of the store. She was clear that she didn't know the first man. He had a face, something covering his face. But she was 100% positive that the second man was the defendant. That's because she knew him. They didn't have to piece together some identification. They actually knew. She actually knew who this gentleman was. Saw hundreds of pictures of this gentleman that the police showed him, still identified him, even in the face of lots of photographs. And so that ties defendant to the crime scene. And you're talking about the witness. Shania Sherman. And then you move over to Corey Braggs, who was incarcerated with the defendant. Testified that the defendant told him that the defendant, D'Angelo, went to this gas station with the intention of committing a robbery and committed the crime. And then Braggs also testified that they hid the gun that was used at D'Angelo's sister's. Of course, that's where they found the gun. Braggs also testified that his co-defendant, Lindsay, would plead the fifth. Well, of course, that's what happened, too, as Lindsay, of course, attempted to do that over and over. The people would submit that Braggs has pretty strong credibility, because how is he going to make these things up? How is he going to, where else is he going to find out that the defendant's co-defendant is going to plead the fifth if the defendant didn't actually say that to him in prison? Further, Braggs, again, said that the gun was at the sister's. Well, the gun was actually found at D'Angelo and Lindsay's sister's house. That supports Braggs' testimony. So the people would submit that there was strong evidence that the defendant was involved in the crime that ended up in Anil Digra's murder. And so even if this court finds that the error was committed by the prosecutor, that the error was harmless, and this court should affirm the defendant's conviction. Is there any other questions I may have to answer? Thank you. Thank you, Mr. Nicolosi. Mr. Kauflitz? Your Honor, if there's none, I have nothing further to add. I just want to let you know that I have five minutes to speak. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a decision will be issued to you as soon as possible.